### KATHLEEN K. LUCAS *v.* EDWARD A. LUCAS
### (AC 24499)

Foti, Flynn and Hennessy, Js.

Submitted on briefs November 18, 2004—officially released March 29, 2005

*Edward A. Lucas*, pro se, the appellant (defendant), filed a brief.

*Opinion*

FLYNN, J. The pro se defendant, Edward A. Lucas, appeals from the judgment of the trial court granting the motion of the plaintiff, Kathleen K. Lucas, for modification of her child support. The defendant claims that the court (1) was bound by the decision of the Social Security Administration concerning his work ability, (2) improperly determined issues concerning his ability to work because the issue could not be relitigated, (3) incorrectly applied the law when it calculated the income of the parties for purposes of the plaintiff's motion for modification, (4) improperly calculated the amount of child support owed by the plaintiff and the defendant and (5) was prejudiced against the defendant. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the issues on appeal. The court, *Hon. Norris L. O'Neill*, judge trial referee, dissolved the marriage of the parties on September 4, 1996. The court awarded legal custody of the three minor children to the plaintiff. On September 4, 2001, on the basis of an agreement between the parties, the court ordered that the defendant have primary physical custody of the parties' son and the plaintiff have primary physical custody of one of the parties' daughters; the other daughter had reached majority by that time. The court also ordered, and the parties agreed, that the plaintiff was to pay the defendant $23 per week in child support. The order was entered without prejudice so that the parties had time to review the child support guideline sheet for accuracy because of the uncertainty involved

in calculating the guideline worksheet due to the defendant's social security disability benefits.

In November, 2001, the defendant filed a motion for modification, and in January, 2002, the court, *Cohn, J.*, granted the defendant's motion to modify support, ordered the plaintiff to pay child support in the amount of $142 per week and ordered an arrearage to be paid to the defendant.

The plaintiff filed a motion for modification of child support on August 26, 2002, alleging a substantial change in circumstances, which she amended on December 5, 2002, further alleging that her income had been diminished and that the defendant was intentionally unemployed. The court, *Resha, J.*, issued a decision on February 20, 2003, which resolved certain issues pending between the parties, and the court continued the hearing to determine whether modification of child support was appropriate. The court heard testimony on November 27, 2002, and June 11, 2003. In its July 23, 2003 ruling, the court determined that a modification of child support was in order because the defendant was not working to his earning capacity. The court ordered the modification retroactive to August 26, 2002. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first contends that the constitution of the United States, article one, § 8, provides that Congress shall have the power to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." Although lacking a complete analysis, the defendant's argument seems to be that, because the Social Security Administration has deemed him disabled from work for pur-

poses of receiving social security benefits, the Superior Court was without jurisdiction to decide that he was not working to his earning capacity.

The short answer to this claim is that a finding of disability by the Social Security Administration was not binding on the Superior Court in its factual determination that the defendant was not working to his earning capacity for purposes of child support. The court made specific findings about the defendant's earning capacity and stated: "The court does not find the testimony of the defendant to be credible with regard to his alleged lack of earning capacity. . . . The court, having determined that the defendant is not working to his earning capacity, also concludes that he has wilfully restricted his earning capacity to avoid support obligations. . . . The defendant produced no evidence, other than his own testimony, that he was in fact disabled. In fact, the contrary was proven to be true. By the testimony of his own independent witness, the defendant appears to be capable of performing some physical labor. . . . He is evidently highly intelligent as a result of not only his college accomplishments, but also his work history and ability to effectively represent himself throughout these proceedings. He readily admitted that he has not looked for work. . . . The defendant offered no credible evidence as to his disability or lack of ability to earn income."

A finding by the Social Security Administration that the defendant is disabled for purposes of social security disability benefits does not preempt a court from making its own independent determination concerning the defendant's ability to work. See generally *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 30, 783 A.2d 1157 (2001) (concluding that "court could not properly infer that the defendant's qualification for and receipt of social security disability payments foreclosed discussion as to the issue of her health relative to the alimony order").

Our review of factual determinations requires that we do not attempt to retry a trial court's factual findings. Unless those findings are clearly erroneous, we do not reverse them. See *Lambert* v. *Donahue*, 78 Conn. App. 493, 498, 827 A.2d 729 (2003). The defendant has failed in his burden to show that the court's findings were clearly erroneous.

## II

The defendant, citing *Ashe* v. *Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970), claims that the issue of his working ability cannot be relitigated because it was addressed in the original divorce proceeding several years earlier.

The short answer to this argument is that our law permits modification of support obligations when circumstances of the parties change. *Turner* v. *Turner*, 219 Conn. 703, 718, 595 A.2d 297 (1991). Nothing in the divorce decree provided otherwise. This argument is, therefore, without merit. *Ashe* v. *Swenson*, supra, 397 U.S. 443, is inapposite because it did not pertain to child support obligations.

## III

The defendant next claims that the court did not apply the law correctly when it calculated the parties' income. Specifically, the defendant contends that the court should have considered the plaintiff's and the defendant's incomes for the thirteen week period prior to the plaintiff's filing of her motion for modification on August 26, 2002.

The defendant has provided an inadequate record to review this claim. The July 23, 2003 memorandum of decision, does not explain from what date the court determined the parties' respective incomes, and the defendant did not file a motion for articulation. Without further clarification, we do not know precisely how

the court made its calculations or how many weeks it considered when determining the parties' net incomes. Additionally, the defendant has not provided a transcript from the November 27, 2002 hearing at which partial testimony was heard on the plaintiff's motion for modification. Thus, we have no basis on which to conduct a review of the court's decision. See *Bebry* v. *Zanauskas*, 81 Conn. App. 586, 594, 841 A.2d 282 (2004). Consequently, we decline to review the claim.

IV

The defendant next claims that the court improperly calculated the amount of child support owed by the parties.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Lambert* v. *Donahue*, supra, 78 Conn. App. 498.

A

The defendant first claims that the court acted improperly when it retroactively modified the plaintiff's

child support payments on the basis of the plaintiff's alleged income as of the date of the hearing rather than on the basis of her alleged income as of the date of her initial motion for modification. Specifically, the defendant argues that the plaintiff's income was $650 per week on June 10, 2003, and $1458 per week as of August 26, 2002, the date of the plaintiff's initial motion for modification. He further argues that the court improperly used the $650 of income in its calculations. Because the defendant has presented us with an inadequate record, we are unable to review this claim.

The court does not explain, and there is nothing in the record showing, the plaintiff's income at the various points in time that the defendant argues are relevant to his claim. The defendant's failure to seek an articulation of the trial court's decision to clarify those issues and to preserve them properly for appeal leaves this court unable to engage in a meaningful review. See *J.K. Scanlan Co.* v. *Construction Group, Inc.*, 80 Conn. App. 345, 352, 835 A.2d 79 (2003). Accordingly, we decline to review this claim.

B

The defendant next claims that certain factual determinations by the court were improper. We will address these claims together, as our analysis of them is the same. The defendant claims that (1) the plaintiff was given credit for forty-three payments of $28 each made to attorney James W. Lux, who represented the minor children, to hold in escrow, when the plaintiff did not make all forty-three payments, (2) the court improperly gave the plaintiff a credit for the forty-three week period in question when she had made payments for only thirty-eight of those weeks, (3) the court failed to find that the plaintiff was $1878 in arrears in her child support payments when she filed her motion for modification on August 26, 2002, and failed to give the defendant a

credit for that amount, and (4) the court incorrectly determined with no evidentiary basis that the defendant had a credit line with Lowe's Home Improvement Center.

The defendant again has not provided us with an adequate record for review. The transcript, including at least the plaintiff's entire testimony on direct examination, is missing.[1] We therefore cannot know whether the plaintiff's direct testimony contained evidence supporting the court's factual conclusions. We note that it is the appellant's duty to furnish this court with an adequate record. *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 394, 757 A.2d 1074 (2000).

C

The defendant next claims that the court acted improperly when it made its modification retroactive to the date of the initial motion for modification filed on August 26, 2002. Specifically, the defendant contends that because the plaintiff added a "new claim" on December 5, 2002, when she filed an amended motion for modification, which stated, inter alia, that the defendant was underemployed, any calculations the court made regarding the new allegation should have been retroactive to the date of the amended motion, not the date of the initial motion. We are not persuaded.

The respondent's argument raises a question of statutory interpretation. "Statutory construction is a question of law and therefore our review is plenary." (Internal quotation marks omitted.) *In re Joshua S.*, 260 Conn. 182, 213, 796 A.2d 1141 (2002).

---

[1] The defendant's transcript order form, JD-ES-98, shows that he ordered only the transcript from June 11, 2003, and not from November 27, 2002, which includes, at least, the plaintiff's entire direct testimony. We have no way of knowing what, if any, additional testimony may have been offered at the November 27, 2002 hearing.

General Statutes § 46b-86 (a) governs the availability of retroactive modification of child support orders. It provides in relevant part: "No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50."

If the plaintiff's August 26, 2002 motion for modification was "pending" under § 46b-86 (a) until the court's July 23, 2003 ruling, despite that the plaintiff later made an amendment to that original motion, then a modification retroactive to the date of the initial August motion would be permissible under the statute.

There are no appellate cases that determine whether modifications of child support orders, which are based, in part, on issues raised in a subsequent amended motion, can be modified retroactively to the date of the initial motion or whether they properly may be modified retroactively only to the date of the amended motion. In other words, no appellate cases have defined the term "pending motion" for purposes of § 46b-86 (a).

Our Supreme Court has stated its reasoning behind the prohibition against retroactive modifications of alimony and child support orders when no motion was pending. See *Sanchione* v. *Sanchione*, 173 Conn. 397, 405–406, 378 A.2d 522 (1977). "One reason which has been advanced by the courts is that unpaid alimony installments are in the nature of a final judgment which cannot be retroactively disturbed, and the court's right to modify the alimony decree therefore extends only to the executory portion of the order, i.e., to payments to become due in the future. . . . Of equal concern is the fact . . . that a [retroactively] modifiable alimony

decree is not entitled to full faith and credit in another state's courts . . . . Yet another consideration is that trial courts asked to modify retroactively the original alimony order might well become engaged in what would essentially be appellate review of another trial court's judgment, or in 'second-guessing' another trial court. There is no need to elaborate on the confusion, uncertainty or even 'judge-shopping' that might result." (Citations omitted.) Id. "In 1990, however, the Connecticut legislature passed an amendment to § 46b-86 (a) that . . . permitted the retroactive modification of alimony awards back to the date of the motion to modify." (Citation omitted; internal quotation marks omitted.) *Milbauer* v. *Milbauer*, 54 Conn. App. 304, 310, 733 A.2d 907 (1999). "If the trial court decides that a party is entitled to an increase in an award of alimony, the court's order should be effective as of the date of service of notice of the motion . . . so as to afford the [party] the benefit of the modification from the time when it was originally sought." (Internal quotation marks omitted.) Id., 310 n.2. The legislative history of the 1990 amendment to § 46b-86 (a), does not expressly reveal the meaning of the words "pending motion," but reiterates that "[t]he bill prohibits retroactive modifications of support, except from the time between when a motion is filed and the [case] is heard." 33 H.R. Proc., Pt. 11, 1990 Sess., p. 3626, remarks of Representative Douglas C. Mintz.

Because § 46b-86 (a) does not define the words "pending motion," "[i]n the absence of . . . statutory . . . guidance [the court] may appropriately look to the meaning of the word[s] as commonly expressed in the law and in dictionaries." (Internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 178, 713 A.2d 1269 (1998). Black's Law Dictionary defines "pending" as "remaining undecided . . . ." Black's Law Dictionary (7th Ed. 1999).

Both before and after the amended motion for modification, it was clear that the plaintiff was seeking an increase in child support due to *changed circumstances*. Section 46b-86 (a) specifically provides in relevant part: "[M]odification of any child support order . . . may be made upon a showing of such substantial change of circumstances . . . ." The initial motion for modification represented that the prior orders issued on January 7 and March 18, 2002, were "based on inaccurate calculation of the plaintiff['s] and defendant's child support obligations and that the plaintiff's income had diminished after entry of both orders," and the amendment added a third cause, namely, that the defendant had an earning capacity which he failed to utilize and was intentionally underemployed or was earning income without disclosing the same to the court. However, both the original motion and the amended motion were based properly on a "substantial change of circumstances."

We conclude that the initial motion was undecided and that the relief sought did not change from the initial motion for modification to the amended motion for modification, and that, therefore, the initial August motion for modification was "pending" for the purpose of retroactivity from the August 26, 2002 filing. "[T]he purpose of a child support order is to provide for the care and well-being of minor children . . . ." *Battersby* v. *Battersby*, 218 Conn. 467, 473, 590 A.2d 427 (1991). We therefore construe statutes enacted in aid of that important purpose liberally rather than narrowly. See generally *Guille* v. *Guille*, 196 Conn. 260, 266, 492 A.2d 175 (1985) (our Supreme Court has "construed broadly statutes providing for parental support of minor children"). We conclude that the court acted properly in making its order retroactive to the initial August 26, 2002 motion for modification.

## V

The defendant next claims that the court was prejudiced against him because certain rulings were not made in his favor. We analyze each of these claims separately insofar as they are reviewable.

### A

The defendant claims that the court was prejudiced against him when it stated in its memorandum of decision that "the hearing was continued for the sole purpose of considering the plaintiff's request for a court-ordered modification of child support based upon her reduced income and the defendant's alleged earning capacity." Specifically, the defendant contends that by failing to indicate that the plaintiff's income might be reduced, the court obviously was prejudiced against him.

"Accusations of judicial bias or misconduct implicate the basic concepts of a fair trial. . . . The appearance as well as the actuality of [partiality] on the part of the trier will suffice to constitute proof of bias sufficient to warrant disqualification. . . . Canon 3 (c) (1) provides in relevant part: A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party . . . .

"To prevail on [his] claim of a violation of this canon, the [defendant] need not show actual bias. The [defendant] has met [his] burden if [he] can prove that the conduct in question gave rise to a reasonable appearance of impropriety." (Citation omitted; internal quotation marks omitted.) *State* v. *Montini*, 52 Conn. App. 682, 694, 730 A.2d 76, cert. denied, 249 Conn. 909, 733 A.2d 227 (1999).

The defendant has not referred to any evidence that demonstrates the court's bias against him. The defendant has not met the burden of proof required to prevail on a claim of judicial impropriety, and we find no merit to this claim.

B

The defendant contends that the court improperly excluded literature concerning his illnesses and the side effects of his medications on the ground that such evidence could not be cross-examined, while permitting the plaintiff to introduce a letter "presumably from her accountant." We are not persuaded.

The standard of review that we apply to a court's evidentiary rulings is well settled. "Such rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion. . . . [A]n evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful." (Internal quotation marks omitted.) *Madsen* v. *Gates*, 85 Conn. App. 383, 399, 857 A.2d 412, cert. denied, 272 Conn. 902, 863 A.2d 695 (2004). The court did not permit the defendant to introduce into evidence documents downloaded from the Internet because they could not be subject to cross-examination and because the defendant did not comply with Practice Book § 13-4, which required the defendant to disclose expert testimony prior to the hearing. The court, however, did permit the defendant to testify on the basis of his firsthand knowledge of the symptoms and conditions that he experienced. The court did not abuse its discretion in excluding the evidence in question.

With regard to the court's ruling on the plaintiff's admission of certain evidence, such as the letter from her accountant, the defendant again has provided an

inadequate record to review this claim. The defendant has not provided us with a transcript of the plaintiff's direct examination and we, therefore, are unable to analyze the offer of proof related to this document. Additionally, we are unable to locate such a letter in the exhibit folder from the hearing. Accordingly, we decline to review this claim concerning the court's evidentiary ruling on the claimed improper admission of this evidence.

## C

The defendant next contends that the court improperly accepted comments by the plaintiff's counsel as evidence. After the defendant testified that he was unsure of the date that he applied for disability, the plaintiff's counsel stated: "And as soon as you got out of jail, you applied for social security disability. Didn't you?" The defendant claims that the court was prejudiced against him because it "clearly took counsel's comments as evidence." We are not persuaded.

The defendant is correct in his stating that statements by lawyers during the course of examination or argument are not evidence. *State* v. *Duntz*, 223 Conn. 207, 236, 613 A.2d 224 (1992). Absent some indication in the record to the contrary, we presume that the court followed such elementary principles of our law and thus reject this claim.

## D

The defendant next claims that certain factual findings by the court regarding his ability to work were incorrect.

We reiterate the standard of review. "Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the

pleadings in the record as a whole." (Internal quotation marks omitted.) *Lambert* v. *Donahue,* supra, 78 Conn. App. 498.

1

Although the defendant's argument lacks a complete analysis, the defendant appears to claim that the court improperly determined that he could perform the duties of a bank teller, when it stated in its memorandum of decision that "the defendant was in the banking business for many years and was vice president in charge of lending at the First New England Credit Union for about three years. That notwithstanding, the defendant's testimony is that he cannot even perform functions of a bank teller."

Contrary to the defendant's contention, the court did not state that the defendant is able to perform the functions of a bank teller, but, rather, the court made the broader statement that "the defendant is not working to his earning capacity . . . . The defendant produced no evidence, other than his own testimony, that he was in fact disabled. In fact, the contrary was proven to be true. . . . [T]he defendant was in the banking business for many years and was a vice president in charge of lending at the First New England Credit Union for about three years. That notwithstanding, the defendant's testimony is that he cannot even perform functions of a bank teller. The defendant is forty-six years old and has earned a bachelor of arts college degree in political science. He is evidently highly intelligent as a result of not only his college accomplishments, but also his work history and ability to effectively represent himself throughout these proceedings. . . . The defendant offered no credible evidence as to his disability or lack of ability to earn income." Clearly, the court found that the defendant was an intelligent, capable, educated man who offered no credible evidence that he was unable

to earn a living. The defendant has not shown this finding to be clearly erroneous.

### 2

The defendant also contends that the court improperly determined that "[b]y the testimony of his own independent witness, the defendant appears to be capable of performing some physical labor," in light of the fact that the defendant called only the plaintiff as a witness.

Whether, in fact, the court was referring to the defendant or some other person when it stated that "[b]y the testimony of his own independent witness, the defendant appears to be capable of performing some physical labor," is not capable of determination from the partial record of testimony provided to us by the defendant. Furthermore, the defendant never requested an articulation from the court regarding this statement. We therefore reject this last claim as unreviewable.

The judgment is affirmed.

In this opinion the other judges concurred.